IN RE INTEREST OF STANLEY KINNEBREW, ALLEGED TO BE A
MENTALLY ILL DANGEROUS PERSON.
STATE OF NEBRASKA, APPELLEE, V. STANLEY KINNEBREW,
APPELLANT.
402 N.W.2d 264

Filed March 13, 1987.   No. 86-328.

Dennis R. Keefe, Lancaster County Public Defender, and Robert G. Hays, for appellant.

Michael G. Heavican, Lancaster County Attorney, and Mary L. Thramer, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

Appellant, Stanley Kinnebrew, was found by the Lancaster County Mental Health Board (hereafter board) to be a mentally ill and dangerous person, as defined by Neb. Rev. Stat. § 83-1009 (Cum. Supp. 1986). Appellant was committed to the Department of Public Institutions for inpatient treatment. Kinnebrew appealed to the Lancaster County District Court, which affirmed the order of commitment by the board. Kinnebrew timely appealed to this court. We affirm.

Before a person may be committed for treatment by a mental health board, it is necessary that that person be found to be mentally ill and that the person presents a substantial risk of harm to others or to himself. § 83-1009; *In re Interest of Ely*, 220 Neb. 731, 371 N.W.2d 724 (1985). In the present case, appellant was found to be a mentally ill person and a person who presented a substantial risk of serious harm to himself because of his inability to provide for his basic human needs, including food, clothing, shelter, or essential medical care. § 83-1009(2). In this court, appellant does not argue that the finding of mental illness is incorrect, but only that the court erred in finding appellant was dangerous to himself.

In mental commitment proceedings the district court reviews the determination of the mental health board de novo on the record. The standard of review by this court requires that a final order made by the district court must be affirmed unless this court can say, as a matter of law, that the order is not supported by clear and convincing evidence. See *In re Interest of Ely, supra*.

In the hearing before the board, the only evidence adduced

was that of a staff psychiatrist at the Lincoln Regional Center, Dr. Somasundaram Rajendran. This witness testified that in his expert opinion appellant was suffering from a mental illness and that

> [i]n my initial impression he is suffering from schizo-effective disorder. It is a form of psychosis where the person loses contact with his surroundings and does not share reality with other people, becomes delusional, may have hallucinations, also have mood changes, depression, and not able to function to their potential.

Dr. Rajendran also testified that in his expert opinion appellant "would not be able to meet his basic needs if left alone . . . [l]ike eating, taking care of his body needs, taking medication, able to communicate with other people."

The evidence of the psychiatrist was the only evidence before the board and was marked, in the district court, as exhibit 1. The record before us also contains a "transcript," which contains the pleadings before the board, consisting of the petition before the board, the warrant of arrest with a return of service, the summons to a hearing, the "emergency admittance pursuant to certificate of a peace officer of person alleged to be mentally ill or alcoholic and dangerous," seven pages of a supplementary police report, a praecipe, and the "order of commitment for observation." This transcript was marked as exhibit 2 before the district court. Both exhibits were received, without objection, in the de novo hearing before the district court.

Basic to the difficulties presented by this case is the problem that at some time in the briefs each of the parties treats the hearsay evidence contained in the transcript as fact, while the basic thrust of Kinnebrew's appeal is that there were no facts before the board to justify a finding of appellant's dangerousness to himself because of his inability to take care of his basic needs.

Appellant states in his brief, in his "Statement of Facts":

> Mr. Kinnebrew was admitted to the Lincoln Regional Center on an Emergency Peace Officer's Certificate (E2) which stated that he was brought into the Lincoln Police Department on November 10, 1985 by friends who

claimed that Mr. Kinnebrew was withdrawn, had quit eating and would not leave his room.. Mr. Kinnebrew was examined by staff psychiatrist Dr. Somasundaram Rajendran.

Amended Brief for Appellant at 5.

The emergency peace·officer's certificate referred to in the foregoing statement as "E2," together with the supplementary police report, sets out the following events, some of which are set out in appellee's brief in the "Statement of Facts" therein. On November 10, 1985, appellant, a student at the University of Nebraska, was brought into the Lincoln Police Department by friends who stated that appellant was withdrawn, had not spoken for approximately 3 weeks, had not been eating, and had not been sleeping in his dormitory room. When asked what precipitated bringing the appellant into the police department, one of appellant's friends reported that appellant "refused to acknowledge their existence" earlier that evening, but appellant finally "advised them that something had happened that he didn't want to talk about." Appellant's friends reported that they got the impression he had been assaulted by someone in an unknown manner and that he was so ashamed of it that he did not want to talk to anyone. When brought in appellant was observed to be without a coat, although the evening was chilly, and was wearing dirty pants, a sweatshirt, and shoes with no socks. He appeared to be clean, as if he were bathing on a regular basis, but appeared disoriented and tired.

It is obvious that if exhibit 2, the "transcript," would be considered as evidence before the board and the district court, there is more than enough evidence to support the finding that appellant was dangerous to himself. We hold, however, that the transcript from the board cannot be considered as evidence before the board or the district court unless the facts in the transcript are offered as evidence, are not objected to, and are received by the trier of fact. Neb. Rev. Stat. § 83-1059 (Reissue 1981) provides: "The rules of evidence applicable in civil proceedings shall be followed at all hearings held under this act [the Nebraska Mental Health Commitment Act]. In no event shall evidence be considered which is inadmissible in criminal proceedings."

Exhibit 2, consisting of the transcript of the proceedings before the board, cannot be considered as evidence before the board, before the district court on review, or before this court. The numerous factual allegations in that transcript, many of which are set out as facts in the "Statement of Facts" in the parties' briefs, may not be considered as evidence.

Recognizing that, and applying "the rules of evidence applicable in civil proceedings," we examine the only testimony before the board and before the district court on review. Dr. Rajendran was the only witness, and he testified as an expert. He testified that in forming his opinions as to appellant's condition, he relied on "[i]nformation in the emergency peace officer's certificate, information that's provided by other staff members in the hospital, information we obtained from the family, his friends, from school." In making his diagnosis, the doctor testified that he also relied on "[m]y own personal observation and the history, and the information from other staff."

The rules of evidence applicable to expert witnesses include Neb. Evid. R. 703, 704, and 705 (Neb. Rev. Stat. §§ 27-703, 27-704, and 27-705 (Reissue 1985)). Those rules provide:

> The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

§ 27-703.

> Testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.

§ 27-704.

> The expert may testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data, unless the judge requires otherwise. The expert may in any event be required to disclose the underlying facts or data on

cross-examination.
§ 27-705.

Applying those rules, as required by § 83-1059, to the proceedings in this case, the result is clear that the board had before it an expert's opinion that appellant was mentally ill and could not meet his basic human needs. That opinion was based on the history obtained by the doctor and on the doctor's personal observations, which included the doctor's personal knowledge about appellant's eating and about the fact that appellant's prescribed medication had to be administered by injection because the appellant would not take it.

The doctor was cross-examined by appellant's counsel, and appellant established that he was not physically ill. The board was not requested to have the doctor set out all of the underlying facts on which he based his opinions, nor did the board require the underlying facts to be disclosed. The board could have so ordered, if it desired, under the provisions of rule 705. No evidence was adduced by appellant.

The unrefuted expert testimony before the board, the district court, and this court establishes that appellant was dangerous to himself in that he could not provide for his own basic needs. That opinion was accepted by the board, which observed the only witness in the presence of appellant. It was accepted by the reviewing court. Such evidence, which was not controverted, constitutes clear and convincing evidence sufficient to support the board's order.

Appellant seems to contend that there was no evidence in the record concerning appellant's inability to provide for his basic needs. Appellant confuses the provisions of § 83-1009(1) and (2). Section 83-1009(1) provides that a mentally ill person shall be considered "dangerous" if that person presents "[a] substantial risk of serious harm" to others as "manifested by evidence of recent violent acts or threats . . . ." Section 83-1009(2) provides that before the commitment of a mentally ill person on grounds that that person presents a danger to himself, the evidence must establish that such a person presents "[a] substantial risk of serious harm to himself . . . within the near future as manifested by evidence of recent attempts at, or threats of, suicide or serious bodily harm or evidence of

inability to provide for his . . . basic human needs . . . ." Section 83-1009(1) is concerned with the manifestation of dangerousness to others as shown by acts. Those acts can be specifically identified and, by statute, must be recent. The same reasoning is to be applied to the portion of § 83-1009(2) with regard to dangerousness of the mentally ill person to himself by the specifically identifiable act of suicide or the threat of suicide. Those specific acts must be shown to be recent.

A different situation is presented with regard to the dangerousness of a mentally ill person to himself as manifested by "inability to provide for his . . . basic human needs." Inability is defined as "the quality or state of being unable : lack of ability : lack of sufficient power, strength, resources, or capacity." Webster's Third New International Dictionary, Unabridged 1139 (1981). Inability is not always shown by an identifiable act, but by evidence showing the lack of a quality or capacity to care for oneself. In proving the dangerousness of a mentally ill person as manifested by "evidence of inability to provide for his . . . basic human needs" within the meaning of § 83-1009(2), expert testimony may prove such a condition. If expert testimony is so used, that testimony would ordinarily concern the capacity of the person at the time of his examination by a physician during the mental health commitment proceeding, and need not concern acts before the beginning of the proceeding.

Such evidence, of course, whether it be solely expert testimony or not, must be clear and convincing to the trier of fact before the trier of fact can determine the mentally ill person is dangerous to himself. In the instant case, there was admissible expert testimony adduced that appellant could not provide for his basic needs. That testimony was properly received by the board pursuant to the laws of evidence of this State and was sufficient to constitute clear and convincing evidence to support the board's finding. There was, in addition, other convincing evidence before the board beyond the doctor's expert opinion, because the doctor personally knew that appellant was not eating properly and that appellant's prescribed medication had to be injected because appellant would not take it. The order of the district court, affirming the

board, is supported by clear and convincing evidence and is affirmed.

We note in passing the manner in which these mental health proceedings were handled. First of all, the form petition constituting the basis for this commitment states the petition is filed "pursuant to the provisions of L.B. 806 (Laws 1976)," hardly a readily helpful reference in 1985 or later. That legislative bill has been codified as Neb. Rev. Stat. §§ 83-1001 et seq. since 1976.

We also note that there were at least seven persons, in addition to appellant's friends who initially brought him to the police station seeking help, who knew of appellant's condition before he got into the mental health process. None of these witnesses were called. We have a situation comparable to that in *In re Interest of Ely*, 220 Neb. 731, 371 N.W.2d 724 (1985). In the *Ely* case, the evidence of the only psychiatrist who testified regarding Ely's ability to provide for his basic needs was determined to be insufficient to justify commitment. In this case, the sole evidence of the psychiatrist was determined to be sufficient. The triers of fact in these difficult and important cases are entitled to a broader base for their decisions, particularly when many witnesses are cognizant of basic facts.

AFFIRMED.