Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
01/03/2020 09:05 AM CST

In re Interest of Donald B. and Devin B.,
children under 18 years of age.
State of Nebraska, appellee,
v. Candice I., appellant.

___ N.W.2d ___

Filed October 11, 2019.    No. S-18-675.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings.
2. **Parental Rights: Proof.** In order to terminate an individual's parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in Neb. Rev. Stat. § 43-292 (Reissue 2016) exists and that termination is in the children's best interests.
3. **Parental Rights: Juvenile Courts: Pleadings.** In a termination proceeding, pursuant to Neb. Rev. Stat. § 43-247(6) (Reissue 2016), a court may accept an in-court admission from a parent as to all or part of the allegations in the petition.
4. **Pleas: Evidence: Waiver: Words and Phrases.** A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true.
5. **Parental Rights: Proof.** When a parent admits to the State's allegations regarding the statutory ground for termination of parental rights and that termination is in the children's best interests, the State does not have to prove those allegations by clear and convincing evidence.
6. **Parental Rights: Juvenile Courts: Pleadings.** Because the primary consideration in determining whether to terminate parental rights is the best interests of the child, a juvenile court should have at its disposal the information necessary to make the determination regarding the minor child's best interests regardless of whether the information is

in reference to a time period before or after the filing of the termination petition.

7. **Evidence: Appeal and Error.** In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue.

8. **Juvenile Courts: Jurisdiction: Statutes.** As a statutorily created court of limited and special jurisdiction, a juvenile court has only such authority as has been conferred on it by statute.

Petition for further review from the Court of Appeals, MOORE, Chief Judge, and PIRTLE and ARTERBURN, Judges, on appeal thereto from the Separate Juvenile Court of Douglas County, CHAD M. BROWN, Judge. Judgment of Court of Appeals reversed, and cause remanded with directions.

John J. Ekeh, of Ekeh Law Office, for appellant.

Donald W. Kleine, Douglas County Attorney, Natalie Killion, and Jennifer Chrystal-Clark for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, PAPIK, and FREUDENBERG, JJ.

CASSEL, J.

## I. INTRODUCTION

Candice I. petitions for further review of the Nebraska Court of Appeals' decision affirming the termination of her parental rights to one of her minor children based upon her admissions and the State's factual basis presented at the termination hearing. Upon a de novo review of the record, the indistinguishable progress made by Candice with both children does not support a sufficient factual basis that termination of her parental rights was in only one child's best interests. Accordingly, we reverse, and remand with directions.

## II. BACKGROUND

Candice is the natural mother of Donald B., born in 2003, and Devin B., born in 2004. In 2015, the juvenile court

adjudicated that both children shall be under the temporary custody of the Department of Health and Human Services (DHHS). Since the adjudication, the children have remained in the custody of DHHS.

## 1. HEARING ON TERMINATION OF PARENTAL RIGHTS TO DEVIN

In January 2018, the State filed its third motion to terminate Candice's parental rights to both Donald and Devin. Six months later, the juvenile court held a hearing on the motion.

Pursuant to a "plea deal" announced at the hearing, Candice admitted to count I (Devin was within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016)), count II (Candice failed to comply with several court-ordered rehabilitation plans), count IV (Devin came within the meaning of Neb. Rev. Stat. § 43-292(1) (Reissue 2016)), count IX (terminating Candice's parental rights was in Devin's best interests), and count X (reasonable efforts under Neb. Rev. Stat. § 43-283.01 (Cum. Supp. 2018) were not required due to abandonment). And in return, the State dismissed all the allegations as to Donald and the remaining allegations as to Devin. As a condition of the "plea deal," the State represented that Candice's admissions would be treated as a "voluntary relinquishment."

During the termination and permanency hearing, the court recited the allegations contained in the third motion to terminate parental rights. Before and after the recitation, the court conducted a colloquy with Candice to advise her of the rights that she would be waiving. Candice then admitted to the allegations.

After Candice's admissions, the State set forth a factual basis for the plea, and we summarize its recitation. It stated it would show that Devin was removed from his parental care in 2015. As part of the removal, the court entered several orders. Candice failed to comply with the orders to reunify with Devin. Prior to filing the motion for termination, she did not have contact with Devin for 2 years. And other case

professionals would testify to the lack of contact between Candice and Devin. Devin's caseworker would testify that she made efforts to engage Candice in reunification. Based upon the caseworker's education, training, and experience with the family, she would testify that it was in Devin's best interests to terminate Candice's parental rights.

Based upon Candice's admissions and the factual basis recited by the State, the juvenile court made several findings. Pursuant to count III, the court took judicial notice of its own record and orders in the case. It found that (1) there was a factual basis for the counts; (2) the admissions to the motion were true by clear and convincing evidence; (3) the plea was knowingly, intelligently, and understandingly made; and (4) it was in Devin's best interests to terminate Candice's parental rights. It terminated Candice's parental rights and found that "this is to be treated as a voluntary relinquishment to this Court and it cannot be used for any further filings or proceedings by the county attorney or any other party." The hearing continued with respect to Donald's status, during which evidence was considered. We will return to that evidence later.

### 2. Court of Appeals' Decision

Candice timely appealed and challenged the termination of her parental rights.[1] She assigned that the court lacked authority to accept her admissions as a voluntary relinquishment. Additionally, she assigned that the court erred in terminating her parental rights to Devin.

The Court of Appeals reasoned that the juvenile court was empowered to accept Candice's admissions and to rely on the admissions when terminating her parental rights. It disregarded the cases she discussed about relinquishment of parental rights, because, it said, those cases were concerned about a juvenile court's authority to order DHHS to accept a voluntary relinquishment from a parent.

---

[1] *In re Interest of Donald B. & Devin B.*, 27 Neb. App. 126, 927 N.W.2d 67 (2019).

It also reasoned that based on Candice's admission that termination was in Devin's best interests, her acquiescence to the factual basis, and her reunification efforts with Donald, there was sufficient evidence to terminate her parental rights to Devin. It emphasized that "[t]he record shows that although Candice ceased having contact with Devin more than 2 years prior to the State's filing the third petition for termination of parental rights, she was maintaining contact with Donald."[2] It concluded that based on the record, it could find no basis to set aside the parties' agreement when the plea was entered into knowingly, voluntarily, and intelligently. It affirmed the termination of Candice's parental rights to Devin.

Candice timely petitioned for further review, which we granted.[3]

### III. ASSIGNMENTS OF ERROR

Candice assigns that the Court of Appeals (1) erred in failing to make a proper de novo review when "it disregarded evidence that the [j]uvenile [c]ourt erred in terminating [her parental] rights" and (2) erred in affirming the juvenile court's decision to accept her admissions as a voluntary relinquishment of her parental rights to Devin.

### IV. STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches a conclusion independently of the juvenile court's findings.[4]

### V. ANALYSIS

#### 1. Termination of Parental Rights

##### (a) Candice's Arguments

In her petition for further review, Candice argues that if she is a fit parent to strive for reunification with Donald, then the

---

[2] *Id.* at 133-34, 927 N.W.2d at 73.

[3] See Neb. Ct. R. App. P. § 2-102(F) (rev. 2015).

[4] *In re Interest of Michael N.*, 302 Neb. 652, 925 N.W.2d 51 (2019).

same must be true with Devin. She analogizes her case to *In re Interest of Xavier H.*,[5] where the facts were insufficient to show that the mother was an unfit parent to her child in DHHS custody, when she was a fit parent to the other children in her care. Candice contends that the court should not have accepted an agreement that makes a parent choose between her children. She asserts that the "plea deal" was suggestive she prefers one child over another and that thus, she "had to choose between giving up her rights of one child over the other."[6]

### (b) Statutory Grounds
### for Termination

[2,3] In order to terminate an individual's parental rights, the State must prove by clear and convincing evidence that one of the statutory grounds enumerated in § 43-292 exists and that termination is in the children's best interests.[7] In a termination proceeding, pursuant to § 43-247(6), a court may accept an in-court admission from a parent as to all or part of the allegations in the petition.[8] Here, the juvenile court had authority to accept the in-court admissions during the termination proceeding pursuant to § 43-247(6).

[4] When a parent, pursuant to § 43-279.01(3), admits to allegations in a termination proceeding, we have characterized it as a judicial admission.[9] A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true.[10]

---

[5] *In re Interest of Xavier H.*, 274 Neb. 331, 740 N.W.2d 13 (2007).

[6] Brief for appellant in support of petition for further review at 2.

[7] *In re Interest of Joseph S. et al.*, 291 Neb. 953, 870 N.W.2d 141 (2015).

[8] See Neb. Rev. Stat. § 43-279.01 (Reissue 2016).

[9] See *In re Interest of L.B., A.B., and A.T.*, 235 Neb. 134, 454 N.W.2d 285 (1990).

[10] *Id*. See, also, *In re Interest of Zanaya W. et al.*, 291 Neb. 20, 863 N.W.2d 803 (2015).

[5] When a parent admits to the State's allegations regarding the statutory ground for termination of parental rights and that termination is in the children's best interests, the State does not have to prove those allegations by clear and convincing evidence.[11] Regarding a factual basis, § 43-279.01(3) requires only that "[t]he court shall ascertain a factual basis for an admission . . . ." "The statute does not specify precisely what the factual basis must entail."[12]

Because Candice admitted to the allegations in the motion to terminate, the State did not have to prove them by clear and convincing evidence. It was only required to set forth a factual basis. We must examine whether the factual basis was sufficient to support the admissions. Here, we have an unusual series of events, where a factual basis, apparently sufficient on its face, is undermined by evidence presented during the hearing.

### (c) Best Interests of Child

[6] We first address the factual basis to support Devin's best interests. Because the primary consideration in determining whether to terminate parental rights is the best interests of the child, a juvenile court should have at its disposal the information necessary to make the determination regarding the minor child's best interests regardless of whether the information is in reference to a time period before or after the filing of the termination petition.[13] While statutory grounds for termination are based on past conduct, the best interests element focuses on future well-being of the child and should not be seen through a microscope, but a telescope.[14]

---

[11] *In re Interest of Brooklyn T. & Charlotte T.*, 26 Neb. App. 669, 922 N.W.2d 240 (2018).

[12] *In re Interest of Zanaya W. et al., supra* note 10, 291 Neb. at 28, 863 N.W.2d at 810.

[13] See *Kenneth C. v. Lacie H.*, 286 Neb. 799, 839 N.W.2d 305 (2013).

[14] See 4 Christine P. Costanakos, Nebraska Practice, Juvenile Court Law and Practice § 5:14 (2018).

### (i) Additional Facts

[7] In a review de novo on the record, an appellate court reappraises the evidence as presented by the record and reaches its own independent conclusions with respect to the matters at issue.[15] We will consider all the evidence presented at the hearing which is relevant to Devin's best interests. Additional evidence relevant to our analysis was presented during the second half of the termination hearing, when the court conducted a permanency hearing for Donald.

In the State's factual basis, it specifically stated that Devin's caseworker would testify that "it was in the best interest due to the length of time that [Candice and Devin] did not have contact, as well as the lack of progress being made."

During the permanency hearing, the State entered several exhibits, including the DHHS court report signed 3 days before the hearing. In an update from December 2017, the DHHS court report stated that Candice had been meeting with the caseworker and that Candice "[had] not started visiting with the boys yet as there are concerns with her visiting them when she has been out of the picture for 2 years now. Therapeutic visits are looking into being set up." In February 2018, Candice began weekly therapy with Donald and therapy every other week with Devin. Since that time, Candice had consistently participated in therapy with the children.

In the DHHS court report, it recommended that the court adopt the case plan and court report. DHHS stated that in regard to Donald and Devin, "[f]air progress is being made to alleviate the causes of out-of-home placement." It further stated that "[t]he primary permanency plan of Reunification is being achieved by [December 2018]." It recommended that the court adopt a permanency objective of reunification concurrent with adoption for both Donald and Devin.

During the permanency hearing, the parties discussed the improvements in Candice's life. Candice was employed and

---

[15] *Hotz v. Hotz*, 301 Neb. 102, 917 N.W.2d 467 (2018).

had a one-bedroom home. And all of her drug tests had come back negative. Additionally, she purchased "shoes, clothes, a phone, and [gave] the boys money . . . to assist with their care."

The court remarked that it was "impressed with where [she was] today" and how she "kind of def[ied] odds here." The juvenile court ordered a permanency objective of reunification concurrent with guardianship for Donald. It further ordered that Candice shall have supervised visitation with Donald.

### (ii) Case Law

In *In re Interest of Zanaya W. et al.*,[16] the father admitted to the statutory ground for termination and that termination was in the children's best interests. The juvenile court relied upon the State's factual basis. The father was convicted of possession with intent to distribute marijuana and sentenced to 3 to 5 years' imprisonment. While incarcerated, he was convicted of third degree assault and sentenced to an additional 120 days' imprisonment. The father had admitted he used marijuana on a daily basis when the children were in his care, custody, and control. The caseworker would testify that termination was in the children's best interests, "because [the father] was not able to provide permanency for them."[17]

On appeal, the father asserted that the court relied extensively on his incarceration and that thus, the factual basis was insufficient. We discussed that the factual basis did not rely solely on incarceration. We reasoned that the juvenile court relied on the crimes committed, length of incarceration, prior drug use, length of time the children were in DHHS custody, and prospective testimony to find that the factual basis supported termination. We affirmed the termination of the father's parental rights.

---

[16] *In re Interest of Zanaya W. et al., supra* note 10.

[17] *Id*. at 30, 863 N.W.2d at 811.

In *In re Interest of Brooklyn T. & Charlotte T.*,[18] the mother challenged the sufficiency of the factual basis to support her admissions for termination of her parental rights to both children. The State's factual basis stated that the older child was removed from the mother's home a year prior to the petition for termination, the mother failed to follow through with court-ordered services, and she did not rectify her drug use when her younger child was born. Also, the State recited that the family permanency specialist would testify that termination would be in the children's best interests because of the mother's history with DHHS and the services provided but not utilized. The juvenile court terminated the mother's parental rights to both children.

The Court of Appeals there reasoned that the factual basis was sufficient to support both the statutory ground for termination and the best interests of the children. In its best interests analysis, it examined the additional evidence presented during the hearing. An exhibit contained an affidavit by the family permanency specialist stating that the mother had over 16 intakes with DHHS, the mother relinquished her parental rights to another child, and she used methamphetamine while pregnant with her younger child. The mother made no efforts to regain custody of the older child. She was discharged unsuccessfully from family support services, and she did not participate in court-ordered drug or psychological evaluations. It reasoned that because of her history with DHHS and her failure to address the initial concerns that led to the children's removal, there was a sufficient factual basis to support the best interests admission. The Court of Appeals affirmed the juvenile court's judgment. But there, the Court of Appeals was not presented with evidence contradicting the State's factual basis.

---

[18] *In re Interest of Brooklyn T. & Charlotte T., supra* note 11.

### (iii) Application

Although the State did not have to prove the admissions by clear and convincing evidence, we must examine whether there was a sufficient factual basis to support that it was in Devin's best interests to terminate Candice's parental rights. After a de novo review of the entire record, we conclude that there was not.

The record shows that Donald and Devin were identical in their relationship with Candice. In light of the record, the Court of Appeals' statement that Candice did not have contact with Devin but did maintain contact with Donald was not accurate. For 2 years prior to the motion to terminate, both children did not have contact with Candice. In February 2018, both children began therapy with Candice and continued regularly until the hearing. Candice provided the children with money, clothing, and shoes for their care. In the DHHS case report, it stated that "[f]air progress [was] being made" and that reunification was supposed to be achieved by December 2018. Unlike *In re Interest of Brooklyn T. & Charlotte T.*,[19] the additional evidence presented did not support the factual basis. The record failed to show a contrast in Candice's relationship with Donald and Devin to support that Devin's best interests favored termination while Donald's did not.

Further, the record shows Candice's progress toward reunification with both children. In addition to the facts discussed earlier, Candice successfully completed a substance abuse treatment program, she was attending therapy by herself and with each child, her drug tests were all negative, she had legal and steady income, and she had suitable housing. We cannot ignore the substantial progress made by Candice. And neither did the juvenile court when it remarked on how she "kind of def[ied] odds here." Unlike *In re Interest of Zanaya W. et al.*,[20] there

---

[19] *Id.*

[20] *In re Interest of Zanaya W. et al., supra* note 10.

is little recent evidence to support a persistent lack of effort toward reunification by the parent. Candice's relationships with both children had progressed enough that the DHHS court report recommended reunification as the primary objective for both children. The record does not support the recitation that there was a "lack of progress being made" by Candice.

The children are so factually indistinguishable that the State could have interchanged the children's names and reached the same result. There was no evidence presented, either before or after the court terminated Candice's parental rights, that showed how or why the children differ in their relationship with Candice. Nor was there any evidence presented as to why Candice's rights to Devin were terminated but as to Donald they were not.

At oral argument, the State forthrightly explained that due to Donald's age, he would have to consent to an adoption, but that Devin was below the age requiring such consent. This reason was insufficient to establish that termination of parental rights was in the younger child's best interests. Although there are cases where termination is in the best interests of one sibling and not another,[21] this is not one of them.

Based upon our de novo review of the entire record, we conclude that the factual basis was insufficient to support that it was in Devin's best interests to terminate Candice's parental rights. Accordingly, the Court of Appeals erred in affirming the termination of Candice's parental rights to Devin.

## 2. Voluntary Relinquishment

Candice argues that the juvenile court erred in accepting her admissions as a voluntary relinquishment. The "plea deal" entered between the parties conditioned the termination of parental rights to be treated as a voluntary relinquishment. At oral argument, the State conceded that its representation of

---

[21] See *In re Interest of Justin H. et al.*, 18 Neb. App. 718, 791 N.W.2d 765 (2010).

the proceeding as a "relinquishment" would not be binding on the State in other counties. Nor, perhaps, might it bind a future county attorney in the same county.

[8] We think that the mixing of terminology in this way is fraught with danger. As a statutorily created court of limited and special jurisdiction, a juvenile court has only such authority as has been conferred on it by statute.[22] Under the adoption statutes, a voluntary relinquishment is effective when a parent executes a written instrument and DHHS or an agency, in writing, accepts responsibility for the child.[23] Under the Nebraska Juvenile Code, termination of parental rights is determined by judicial action.[24] Although the practical result may be similar, the mechanisms and effects of those procedures are different and should be treated so. We discourage the practice of characterizing termination and relinquishment interchangeably. The juvenile court should be careful to follow the statutory authority conferred upon it and not to confuse the proceedings by inaccurate or incomplete descriptions.

## VI. CONCLUSION

We conclude that the factual basis was insufficient to support that termination of Candice's parental rights was in Devin's best interests. We reverse the decision of the Court of Appeals and remand the cause to that court with directions to reverse the judgment of the juvenile court and remand the cause to the juvenile court for further proceedings consistent with this opinion.

Reversed and remanded with directions.

---

[22] *In re Interest of Gabriela H.*, 280 Neb. 284, 785 N.W.2d 843 (2010).

[23] See Neb. Rev. Stat. §§ 43-104(2) and 43-106.01 (Reissue 2016).

[24] See Neb. Rev. Stat. § 43-293 (Reissue 2016).